**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUG **2 0** 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | **4:20CR418 JAR/NAB** |
| ) | |
| JAMES TIMOTHY NORMAN, ) | |
| TERICA TANEISHA ELLIS, and ) | |
| WAIEL REBHI YAGHNAM, ) | |
| ) | |
| Defendants. ) | |

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

At all times relevant to this Indictment:

1. Andre Montgomery was born on October 14, 1994.

2. Andre Montgomery's paternal uncle was **JAMES TIMOTHY NORMAN**.

3. Andre Montgomery's father, the brother of **JAMES TIMOTHY NORMAN**, died in Los
   Angeles, California in 1994.

4. Andre Montgomery's Missouri non-driver license indicated that his height was 5'11 and
   his weight was 185 pounds.

5. At no point did Andre Montgomery ever seek or obtain medical treatment at the People's
   Health Center.

6. In August of 2014, Andre Montgomery completed a housing application in which he
   indicated that he was employed at a shop called "Tobacco Road," that his hourly wage was
   $7.25, and that in the month of July, he had earned $696.47.

1

## COUNT I
## [MURDER FOR HIRE CONSPIRACY: 18 U.S.C. § 1958]

7.   Beginning at a time unknown to the Grand Jury, but up to and including March 14, 2016, and through the date of this Indictment, within the Eastern District of Missouri and elsewhere,

### JAMES TIMOTHY NORMAN and
### TERICA TANEISHA ELLIS,

together with other persons known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, and agree to commit an offense against the United States of America, to wit, the crime of murder for hire in violation of Title 18, United States Code, Section 1958, by using and causing others to use facilities of interstate commerce, to wit, cellular telephones, with the intent that the murder of Andre Montgomery be committed in violation of the laws of the State of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits.  Said conspiracy offense resulted in the death of Andre Montgomery on March 14, 2016.

### OBJECT AND PURPOSE

8.   The objects and purposes of the conspiracy were the murder of Andre Montgomery, the nephew of **JAMES TIMOTHY NORMAN**, and the obtaining of money as a result of and in exchange for the commission of Andre Montgomery's murder.

### MEANS AND METHODS

9.   The means and methods by which the conspiracy was sought to be accomplished included, among other things, the following:

(a) It was part of the conspiracy that on October 14, 2014, **JAMES TIMOTHY NORMAN** attempted to obtain a $250,000.00 life insurance policy on his 20-year-old nephew, Andre Montgomery, for which **JAMES TIMOTHY NORMAN** was the sole

2

beneficiary, through Americo Financial Life and Annuity Insurance Company.   This application was later withdrawn.

(b) It was further part of the conspiracy that on October 31, 2014, **JAMES TIMOTHY NORMAN** attempted to obtain a second life insurance policy on Andre Montgomery in the amount of $200,000.00, in addition to an accidental death rider in the amount of $200,000.00, and a 10 year-term rider in the amount of $50,000.00, through The Independent Order of Foresters (hereinafter "Forester's policy"). **JAMES TIMOTHY NORMAN** was the sole beneficiary on this policy.  This is the only policy that issued.

(c) It was further part of the conspiracy that on March 16, 2015, **JAMES TIMOTHY NORMAN** attempted to obtain a replacement policy on Andre Montgomery through Royal Neighbors of America in the amount of $249,999.00, but the application was denied.

(d) It was further part of the conspiracy that the applications for all three of these life insurance applications on Andre Montgomery contained false information regarding Andre Montgomery's income, occupation, and family history.

(e) It was further part of the conspiracy that, on or about March 10, 2016, **TERICA TANEISHA ELLIS** travelled from Memphis, Tennessee to St. Louis, Missouri.

(f) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** flew from Los Angeles, California to St. Louis, Missouri and arrived in St. Louis, Missouri on March 14, 2016.

(g) It was further part of the conspiracy that, on or about March 14, 2016, **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** purchased pre-paid

Tracfone cellular devices at a Walgreens located in the Central West End neighborhood of the City of St. Louis.

(h) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** communicated with one another for the duration of March 14, 2016 using the newly-purchased, pre-paid cellular devices.

(i) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** advised Andre Montgomery to initiate all further communication with her on March 14, 2016 using her newly-purchased, prepaid cellular device.

(j) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** communicated with Andre Montgomery throughout the day on March 14, 2016 for the purpose of determining his whereabouts.

(k) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** used her pre-paid cellular device to communicate Andre Montgomery's locations to **JAMES TIMOTHY NORMAN** and/or other co-conspirators throughout the day on March 14, 2016.

(l) It was further part of the conspiracy that, at approximately 7:07 p.m. (CST) on March 14, 2016, Andre Montgomery texted his location, "3964 natural bridge," to **TERICA TANEISHA ELLIS** on her newly-purchased, pre-paid cellular device.

(m) It was further part of the conspiracy that immediately upon learning Andre Montgomery's location, **TERICA TANEISHA ELLIS** relayed that address to **JAMES TIMOTHY NORMAN** and/or other co-conspirators.

(n) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** met Andre Montgomery at 3964 Natural Bridge Avenue, in the City of St. Louis, at approximately

8:00 p.m. (CST) on March 14, 2016 for the purpose of luring Andre Montgomery outside of the residence.

(o) It was further part of the conspiracy that a co-conspirator shot and killed Andre Montgomery in front of the residence at 3964 Natural Bridge Avenue at approximately 8:02 p.m. (CST).

(p) It was further part of the conspiracy that at 8:03 p.m. (CST), **TERICA TANEISHA ELLIS** called **JAMES TIMOTHY NORMAN** on his newly-purchased, pre-paid cellular device, then immediately began driving back to her home in Memphis, Tennessee.

(q) It was further part of the conspiracy that approximately five-and-a-half hours after the homicide, in the early morning hours of March 15, 2016, **JAMES TIMOTHY NORMAN** flew back to Los Angeles, California.

(r) It was further part of the conspiracy that on March 15, 2016, **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** ceased all use of their pre-paid cellular devices.

(s) It was further part of the conspiracy that, between March 15, 2016 and March 17, 2016, **TERICA TANEISHA ELLIS** deposited over $9,000.00 in cash into multiple bank accounts in Memphis, Tennessee.

(t) It was further part of the conspiracy that on March 18, 2016, WAIEL REBHI YAGHNAM and **JAMES TIMOTHY NORMAN** contacted The Independent Order of Foresters for the purpose of inquiring as to how to collect on the aforementioned Foresters policy.

(u) It was part of the conspiracy that, on or about March 22, 2016, **TERICA TANEISHA ELLIS** flew to Los Angeles, California and met with **JAMES TIMOTHY NORMAN** during her stay there.

(v) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** continued to contact The Independent Order of Foresters on March 21, 2016; August 1, 2016; August 15, 2016; August 26, 2016; and November 18, 2016 for the purpose of attempting to collect on the aforementioned Foresters policy.

(w) It was further part of the conspiracy that in September 2018, **JAMES TIMOTHY NORMAN** retained counsel who sent a letter to The Independent Order of Foresters demanding that they pay out on the aforementioned Foresters policy.

(x) It was further part of the conspiracy that in October 2018, **JAMES TIMOTHY NORMAN** submitted an Affidavit to The Independent Order of Foresters for the purpose of collecting on the aforementioned policy.

In violation of Title 18, United States Code, Section 1958.

## COUNT TWO
## [MURDER FOR HIRE: 18 U.S.C. § 1958]

The Grand Jury further charges that:

On or about March 14, 2016, in the City of St. Louis, within the Eastern District of Missouri,

### JAMES TIMOTHY NORMAN and
### TERICA TANEISHA ELLIS,

the defendants herein, used and caused others to use facilities of interstate commerce, to wit, cellular telephones, with the intent that the murder of Andre Montgomery be committed in violation of the laws of the State of Missouri, as consideration for the receipt of, and as

6

consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits.  Said offense resulted in the death of Andre Montgomery on March 14, 2016.

In violation of Title 18, United States Code, Section 1958.

### COUNT 3
### [WIRE AND MAIL FRAUD CONSPIRACY: 18 U.S.C. § 1349]

10. The allegations contained in Paragraphs 1-6 are realleged and incorporated herein.

11. Beginning in or about October of 2014 and continuing until at least as late as September of 2019, in the Eastern District of Missouri and elsewhere, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** the defendants herein, did voluntarily and intentionally combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to commit the following offense against the United States:

> (a) Having devised and intended to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate and international telephone calls, all in violation of Title 18, United States Code, Section 1343.

> (b) Having devised and intended to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations, and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause documents to be sent or delivered by any private or commercial interstate carrier, or knowingly cause to be delivered by mail or such carrier according to the direction thereon, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

## MANNER AND MEANS

12. In furtherance of the conspiracy and to effect the illegal objects thereof, defendants **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM**, and others known and unknown to the Grand Jury used the following ways, manner and means, among others, to commit wire fraud and mail fraud.

13. The primary purpose of the conspiracy was for **JAMES TIMOTHY NORMAN**, aided and abetted by **WAIEL REBHI YAGHNAM**, to obtain and to be able to collect on a life insurance policy on his nephew, Andre Montgomery, in the event of Andre Montgomery's death, by means of false and fraudulent representations regarding Montgomery's income, employment, net worth, medical history, family history, and the existence of other pending life insurance applications.

## AMERICO LIFE INSURANCE APPLICATION

14. On October 14, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed and then submitted an application to Americo Financial Life and Annuity Insurance Company (hereinafter "Americo"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $250,000 on his nephew, Andre Montgomery.

15. On October 14, 2014, **JAMES TIMOTHY NORMAN** signed the following attestation passage in the Americo life insurance application:

> Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.
>
> ...

> We have read this application and represent to Americo that the statements made on this application are true, complete and correctly recorded to the best of my/our knowledge and belief. I/We agree that Americo can rely on these statements.

16. On October 14, 2014, **WAIEL REBHI YAGHNAM** signed the following attestation passage in **JAMES TIMOTHY NORMAN**'s Americo life insurance application, stating as follows:

> I hereby certify that I have personally asked each question on this application to the Proposed Insured(s), that I have truly and accurately recorded on the application the information supplied by him/her, and that I have no reason to believe that any of the information provided is inaccurate or incomplete. If not, I have set forth my reservations in the "Agent Comments/Remarks" section above.

17. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Americo life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

18. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Americo life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $156.04 from his US Bank account ******** 7746.

19. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Americo life insurance application that Andre Montgomery had an annual income of $100,000.00.

20. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented that Andre Montgomery's height was 5'7 and that his weight was 165 pounds.

21. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented that Andre Montgomery was not under the care of a physician.

22. Between October 16, 2014 and November 3, 2014, representatives of Americo repeatedly attempted to contact **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** via email and telephone with questions regarding the life insurance application, including the reason that Andre Montgomery could not own the life insurance policy, rather than **JAMES TIMOTHY NORMAN**.

23. On December 8, 2014, after **JAMES TIMOTHY NORMAN** had obtained a life insurance policy from a separate insurance company, he and **WAIEL REBHI YAGHNAM** withdrew the Americo life insurance application, which was still pending at that time.

### FORESTERS LIFE INSURANCE APPLICATION

24. On October 31, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed and then submitted an application to The Independent Order of Foresters (hereinafter "Foresters"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $200,000.00, as well as an accidental death rider in the amount of $200,000.00, and a ten-year term rider of $50,000.00, on his nephew, Andre Montgomery.

25. The $200,000.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

26. The $50,000.00 ten-year term rider would pay out in the event that Andre Montgomery died within 10 years of the policy's issuance.

27. On October 31, 2014, **JAMES TIMOTHY NORMAN** signed the following attestation passage in the Foresters life insurance application:

> I, as evidenced by my signature(s) in this Application, declare that: 1) I have reviewed this Application. 2) I was asked every question that applies to me and provided the answers shown, in this Application, to these questions. 3) The statements, answers,

and representations contained in this Application are full, complete and true, to the best of my knowledge and belief.

28. On October 31, 2014, **WAIEL REBHI YAGHNAM** signed the following attestation passage in **JAMES TIMOTHY NORMAN**'s Foresters life insurance application, stating as follows:

> Unless specifically stated otherwise in the Producer Report, I certify each of the following: a) I am not aware of undisclosed information about the health, habits or lifestyle of the proposed insured or a child, identified in this Application, that might affect insurability; b) I personally met with the proposed insured, owner and each child and reviewed the document(s) used to verify identity and birth date; c) I asked the proposed insured, the parent/legal guardian if the proposed insured is a juvenile, and/or the owner each question as written in this Application to which an answer is shown, and recorded the answers as given to me by each person; d) This application was reviewed by each person signing in the Signature Section before it was signed by that person.

29. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Foresters life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

30. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Foresters life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $185.16 from his US Bank account ******** 7746.

31. On October 31, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Foresters life insurance application that Andre Montgomery had an annual income of $28,000.00, despite having represented on October 14, 2014 that Andre Montgomery had an annual income of $100,000.00 in the Americo life insurance application.

11

32. **JAMES TIMOTHY NORMAN** falsely represented in the Foresters life insurance application that Andre Montgomery had a net worth of $200,000.00.

33. **JAMES TIMOTHY NORMAN** falsely indicated in the Foresters life insurance application that his relationship to Andre Montgomery was both as his uncle and as his employer, when in fact, **JAMES TIMOTHY NORMAN** had no employment relationship with Andre Montgomery.

34. **JAMES TIMOTHY NORMAN** falsely indicated in the Foresters life insurance application that Andre Montgomery's father was living, 42 years-old, and healthy, when in fact, Andre Montgomery's father, the brother of **JAMES TIMOTHY NORMAN**, had died in 1994.

35. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that Andre Montgomery had received a "regular check-up" from the attending physician at the People's Health Clinic in December of 2013.

36. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that there was no other life insurance application pending for the proposed insured with Foresters or another insurer, when in fact, the Americo life insurance application submitted by **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** was still pending.

37. On November 6, 2014, Foresters issued a life insurance policy on Andre Montgomery with a face amount of $200,000.00, an accidental death rider of $200,000.00 and a ten-year term insurance rider of $50,000.00. **JAMES TIMOTHY NORMAN** was the policy owner and sole beneficiary.

## ROYAL NEIGHBORS LIFE INSURANCE APPLICATION

38. On March 16, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed an application to Royal Neighbors of America (hereinafter "Royal Neighbors"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $249,999.00, as well as an accidental death rider in the amount of $249,999.00, on his nephew, Andre Montgomery.

39. The $249,999.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

40. Policies with a face amount or rider amount under $250,000.00 did not require the insured to have a physical examination in connection with the policy application.

41. On March 16, 2015, **JAMES TIMOTHY NORMAN** signed an acknowledgment on the Royal Neighbors life insurance application that "[a]ny person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law."

42. On March 16, 2015, **WAIEL REBHI YAGHNAM** signed an attestation in the Royal Neighbors life insurance application indicating that he had "personally review[e]d the I.D. of the Proposed Insured," Andre Montgomery.

43. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Royal Neighbors life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

44. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Royal Neighbors life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $187.06 from his US Bank account ******** 7746.

45. On March 16, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Royal Neighbors life insurance application that Andre Montgomery had an annual income of $50,000.00, despite having represented in the Americo life insurance application on October 14, 2014 that Andre Montgomery had an annual income of $100,000.00, and in the Foresters life insurance application on October 31, 2014, that Andre Montgomery had an annual income of $28,000.00.

46. **JAMES TIMOTHY NORMAN** falsely represented in the Royal Neighbors life insurance application that Andre Montgomery had a net worth of $200,000.00.

47. **JAMES TIMOTHY NORMAN** falsely indicated in the Royal Neighbors life insurance application that his relationship to Andre Montgomery was both as his uncle and as his employer, when in fact, **JAMES TIMOTHY NORMAN** had no employment relationship with Andre Montgomery.

48. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented that Andre Montgomery had received an annual check-up from the attending physician at the People's Choice Centers in September of 2014, despite the fact that Andre Montgomery had never been seen or treated at that clinic.

49. On March 17, 2015, **WAIEL REBHI YAGHNAM** transmitted the life insurance application to Royal Neighbors via facsimile.

50. The Royal Neighbors policy ultimately did not issue.

### CONSPIRATORS' ATTEMPTS TO COLLECT ON THE FORESTERS LIFE INSURANCE POLICY

51. On March 18, 2016, following the murder of Andre Montgomery on March 14, 2016, **WAIEL REBHI YAGHNAM** placed two telephone calls to Foresters seeking to file a

claim on the life insurance policy **JAMES TIMOTHY NORMAN** owned on Andre Montgomery.

52. On March 21, 2016, **JAMES TIMOTHY NORMAN** contacted Foresters twice by telephone seeking to file a claim on the life insurance policy he had taken out on Andre Montgomery.

53. On March 30, 2016, **WAIEL REBHI YAGHNAM** placed a phone call to Foresters lasting 10 minutes and two seconds.

54. On May 21, 2016, **JAMES TIMOTHY NORMAN** submitted to Foresters via US mail a written claim on his life insurance policy on Andre Montgomery.

55. On July 6, 2016, **JAMES TIMOTHY NORMAN** received a letter via US mail from Foresters indicating that Foresters still had not received the finalized police, toxicology and coroner's reports necessary in order to process his claim on the life insurance policy.

56. Between August of 2016 and November of 2016, **JAMES TIMOTHY NORMAN** repeatedly contacted Foresters in connection with his attempt to claim the life insurance policy.

57. In or about September of 2018, **JAMES TIMOTHY NORMAN** retained an attorney to represent him in connection with his attempt to claim the Foresters life insurance policy. That attorney subsequently sent a letter to Foresters indicating that **JAMES TIMOTHY NORMAN** had authorized the attorney to file a lawsuit for failure to promptly pay the life insurance claim.

58. On September 26, 2019, Foresters sent **JAMES TIMOTHY NORMAN** a letter via US mail advising **JAMES TIMOTHY NORMAN** that as of the date of the letter, Foresters

still had not received all of the documentation required to adjudicate his claim on the life

insurance policy.

All in violation of Title 18, United States Code, Section 1349.


A TRUE BILL.


_____

FOREPERSON


JEFFREY B. JENSEN
United States Attorney


_____
ANGIE E. DANIS, #64805MO
GWENDOLYN E. CARROLL, #7657003NY
Assistant United States Attorneys