**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CR-418 JAR |
| | ) |
| JAMES TIMOTHY NORMAN, | ) |
| | ) |
| Defendant. | ) |

### ORDER OF DETENTION

On October 13, 2020 this matter came before the undersigned for a hearing on the United States' motion and supplemental motion for pretrial detention. (Docs. 5, 58). Defendant is charged in an indictment with conspiracy to use interstate commerce facilities in commission of murder for hire, resulting in death in violation of 18 U.S.C. § 1958.

The Bail Reform Act places upon the government a substantial burden of proof regarding whether a person should be detained:

> Only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) [of 18 U.S.C. § 3142] will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

*United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)(quoting *United States v. Orta*, 760 F.2d 887, 891 & n. 20 (8th Cir. 1985) (en banc)).

In determining whether there are conditions that will reasonably assure a defendant's appearance or the safety of the community, the Bail Reform Act requires consideration of: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against

the defendant; (3) the history and characteristics of the defendant, including defendant's past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the danger the defendant poses to any person or the community upon her release. 18 U.S.C. § 3142(g).

As the Eighth Circuit has explained, in passing the Bail Reform Act, Congress was "demonstrating its concern about 'a small but identifiable group of particularly dangerous defendants.'" *Orta*, 760 F.2d at 890 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 6-7). "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891. As the *Orta* Court explained: "[T]he legislative history stresses that the decision to provide for pretrial detention is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial. ***It is anticipated that pretrial release will continue to be appropriate for the majority of Federal defendants***." *Id*. at 890 (citing S.Rep. No. 225, 98th Cong., 1st Sess. p. 12) (emphasis in original).

As the Supreme Court recognized in *United States v. Salerno*, 481 U.S. 739, 755 (1987), "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception " As such, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985).

Defendant is charged with an offense for which the statutorily mandated punishment is either life imprisonment or the death penalty. Therefore, the government's case is aided by a rebuttable presumption that no condition or combination of conditions will reasonably assure defendant's appearance as required and the safety of the community. *See* 18 U.S.C. §3142(f)(B). In light of this presumption, defendant has the burden to produce some evidence

2

that there are conditions of release which will reasonably assure that he will not pose a danger to the community and will not flee. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). If the defendant produces such evidence, the statutory presumption does not disappear; rather, the court must consider the presumption along with all other evidence and determine whether the evidence as a whole supports pretrial detention. *Id.* Throughout all, the government retains the burden of proof described above, *see id.*, and the defendant retains the presumption of innocence. 18 U.S.C. § 3142(j).

The evidence in this case consisted of information contained in the written Pretrial Services Report (Doc. 37), which were not disputed by the parties. In addition, the undersigned considered the testimony provided in the detention hearing for co-defendant Terica Ellis (Doc. 58-1). Thus, the information contained in the written pretrial services report, together with testimony of St. Louis Metropolitan Police Department Detective Donald Thurman and arguments and other information proffered at the detention hearing form the factual basis for this order.

As the Pretrial Services Report indicates Norman who is 41 years old, is a native of the St. Louis area. He has strong family and community ties and proposed living with his mother in St. Louis County. Norman has been employed for the past twelve years and his attorney represented that he could return to this employment if released on bond. Norman has prior felony convictions; in August 1997 he was sentenced to prison in three different cases. First, for an assault second degree; second, for five counts of robbery first degree and five counts of armed criminal action; and third, attempted robbery first degree; four counts of armed criminal action, kidnapping and two counts of robbery first degree.

Norman is presumed innocent, however, pursuant to the Bail Reform Act, I must

3

consider the nature and circumstances of the offense charged. Here, Norman is charged with conspiracy to use interstate commerce facilities in the commission of murder for hire resulting in death. Detective Thurmond testified in the co-defendant's case that Norman utilized co-defendant Ellis to determine the location of the victim, Andre Montgomery so that others could come to that location to commit the murder. It is alleged that Norman paid Ellis $10,000 to secure Montgomery's location. It is also alleged that Norman obtained a life insurance policy on Andre Montgomery before the murder using false information, then following Montgomery's murder, he unsuccessfully attempted to collect on the policy.

The second consideration is the weight of the evidence against the defendant. Having reviewed the testimony of Detective Thurmond, the evidence against Norman is strong. He described how Norman and Ellis communicated before the murder to get Andre Montgomery to the location where the murder took place; that Norman and Ellis purchased prepaid cellular phones that were used to communicate on the day of the murder and which were discarded after the murder; and the fact that Norman and Ellis traveled to St. Louis just before Montgomery's murder and departed, the day after he was killed.

The third consideration is the history and characteristics of the defendant, including defendant's past conduct, and criminal history. Norman has family, a stable home and prospects for employment in the St. Louis area, however he has ties to other locations. He was living in Mississippi when he was arrested in this case. In addition, he was living in Los Angeles, California when Montgomery was murdered. Norman is charged with a crime for which the maximum penalty is life imprisonment or death and the potential penalty may provide incentive for Norman to flee. In addition, as previously noted, Norman's criminal history is significant for violent crimes. He was convicted in 1997 for a total of seven counts

of first-degree robbery, nine counts of armed criminal action, kidnapping and second-degree assault.

The fourth and final consideration is the danger the defendant poses to any person or the community upon release. Considering the charges against Norman as well as his prior convictions for violent crimes, I conclude that Norman poses a danger to the community. Therefore, I find that Norman has not rebutted the presumption of detention. Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion and Supplemental Motion for Pretrial Detention (Docs. 5, 58) are **GRANTED.**

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 16th    day of October 2020.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE