IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. S1-4:20-CR-00418-JAR |
| v. | ) | |
| | ) | |
| JAMES TIMOTHY NORMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OMNIBUS RESPONSE TO DEFENDANT'S RENEWED MOTION
FOR JUDGMENT OF ACQUITTAL (DOC. #468) AND
MOTION FOR NEW TRIAL (DOC. #469)**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Angie E. Danis and Gwendolyn E. Carroll, Assistant United States Attorneys for said District, and for its Omnibus Response to Defendant's Renewed Motion for Judgement of Acquittal (Doc. #468) and Motion for New Trial (Doc. #469) states the following.

**I.      Introduction**

On September 16, 2022, following seven (7) days of evidence and argument, and after approximately 17 hours of deliberations, a jury returned verdicts of guilty against defendant James Timothy Defendant (hereinafter "Defendant") on all counts, to include (Count I) Conspiracy to Utilize a Facility of Interstate Commerce in the Commission of a Murder-for-Hire, in violation of Title 18, United States Code, Section 1958; (Count II) Utilizing a Facility of Interstate Commerce in the Commission of a Murder-for-Hire, in violation of Title 18, United States Code, Sections 2

and 1958; and (Count III) Conspiracy to Commit Mail and Wire Fraud, in violation of Title 18, United States Code, 1349.

Defendant now argues, incorporating his previous Motion pursuant to Rule 29 (Doc. #386), that he is entitled to a judgment of acquittal on all counts because "the record is absent of evidence beyond a reasonable doubt that Defendant intended the murder of Andre Montgomery be committed," claiming that a "leap of faith" would be required to tie the monetary payments to Terica Ellis and Travell Hill to their respective efforts to have Andre Montgomery murdered. *Id.* at p. 3. Defendant's argument rests entirely on the assertion that Defendant's testimony rebuts all evidence set forth in the Government's case-in-chief. *Id.* at p. 4-5. In relation to Count III, Defendant argues that there was no evidence to support the conclusion that Defendant participated in a scheme to defraud any of the life insurance companies who received fraudulent applications relative to a policy on Andre Montgomery's life.

In addition, Defendant also argues that he is entitled to a new trial based on approximately 13 errors in this Court's rulings before and during the trial proceedings. For the reasons set forth herein, both motions are without merit and should be denied in their entirety.

## A. Renewed Motion for Judgment of Acquittal

### 1. Legal Standard

Under Rule 29, this Court, on Defendant's motion must enter "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a), *United States v. Stacks*, 821 F.3d 1038, 1043 (8th Cir. 2016). "A district court must consider a motion for judgment of acquittal with very limited latitude and must neither assess witnesses' credibility nor weigh evidence." *Stacks*, 821 F.3d at 1043, *quoting United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). A guilty verdict is overturned only if, viewing the evidence most

favorably to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *United States v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015); *United States v. Lewis*, 976 F.3d 787, 795 (8th Cir. 2020); *United States v. Bradshaw*, 955 F.3d 699, 704-05 (8th Cir. 2020)).

The Eighth Circuit views "the evidence in the light most favorable to the guilty verdict, and grant[s] all reasonable inferences that are supported by the evidence." *Id.* (citing *United States v. Dean*, 810 F.3d 521, 527 (8th Cir. 2015)). "If evidence consistent with guilt exists, we will not reverse simply because the facts and the circumstances may also be consistent with some innocent explanation. Even where the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. Griffith*, 786 F.3d 1098, 1102 (8th Cir. 2015); *United States v. Huyck*, 849 F.3d 432, 441–42 (8th Cir. 2017).

## 2.   The Court Properly Denied Defendant's Motion for Judgment of Acquittal on All Counts because the Evidence was Sufficient to Sustain Convictions

Evidence presented at trial was not only sufficient to sustain the convictions on all three counts of the Superseding Indictment, but it was overwhelming.  There is no basis to grant a judgment of acquittal on any Count, and this Court should reject Defendant's arguments.  What follows will provide a brief outline, not all inclusive, of the Government's evidence at trial.

To establish that Defendant actively participated in a plot to use a cellular telephone to have his nephew, Andre Montgomery (hereinafter "Montgomery") murdered, the Government first presented Defendant's own text messages with co-defendants Waiel Yaghnam (Exhibits 2O and 2P), Travell Hill (Exhibits 2J, 2N, and 2S), and Terica Ellis (Exhibits 2H, and 29[1]), as well as unindicted co-conspirators Christopher Carroll (Exhibit 2F) and Ed Chandler (Exhibit 2E).  The

---

[1] Exhibit 29 contained Facebook instant messages] that Defendant and Terica Ellis had exchanged on the day of Montgomery's murder.

Government also introduced certified cellular telephone records for most, if not all, of these users to establish that they were the subscribers of the respective phone numbers. Those phone records also worked to establish the location data for the cellular telephones for March 13, 14, and 15, 2016, which served to corroborate the testimony of Government witnesses Terica Ellis, Travell Hill, and Derryl Howard.[2] This location information was summarized by Government expert witness FBI Special Agent Bastian Freund, with the assistance of demonstrative Exhibit 16. The Government also introduced text messages between Montgomery and Terica Ellis in the days leading up to his murder as well as the day of his murder itself (Exhibits 4D, 4E, and 4i).

Importantly, the cellular telephone data established that Defendant and Ellis procured "burner" cellular telephones which were used only on the day of Montgomery's murder. Ellis testified that Defendant instructed her to find Montgomery's location throughout the day, then relay that information back to Defendant. She further testified that they used only those devices to communicate with each other throughout the day. The location data of Defendant's "burner" cellular telephone followed the location data for Defendant's two "legitimate" cellular devices which were subscribed to him, as testified to by FBI SA Freund. Ellis testified, and her cellular data confirmed, that she was at the scene of the murder and contacted Travell Hill to advise she was present. Hill told her to move, at which point she began driving away, then she heard gunshots. Hill testified that he shot Montgomery multiple times outside the residence at 3964 Natural Bridge. The call to 911 for the shooting went out at 8:02 P.M., as demonstrated in Government's Exhibits 53B and 53C. At 8:03 P.M., Ellis testified, and her cellular data confirmed, that she called

---

[2] To establish the location information for Derryl Howard, the Government introduced Exhibit 27A, the subscriber and location information associated with his Google Mail account DJBeatz27@gmail.com.

4

Defendant, at which time Defendant advised her to leave the area and dispose of her cellular telephone.

At 8:06 P.M., Derryl Howard testified that he received a call from Defendant, who advised him to pick up a bag that he had forgotten at the Chase Park Plaza.  This call was verified through Defendant's cellular telephone records in Exhibit 6, page 171.  Howard testified that he returned to the Chase Park Plaza to quickly pick up the bag, which was confirmed through the location data of his DJBeatz27 Gmail location data, admitted as Government's Exhibit 27.

On March 16, 2016, two days after Montgomery's murder, Travell Hill testified that Defendant told him to meet "DJ," or Derryl Howard, to accept $5,000 in cash.  Hill testified that he believed that this was payment for the completion of Montgomery's murder.  Howard testified that he drove to the Peabody Housing Complex and photographed the bundle of money that he was ordered by Defendant to deliver to "Loco," or Travell Hill.  That photograph, Exhibit 27B, was saved to his DJBeatz27 Google account with metadata establishing that the photograph was taken on March 16, 2016 at 3:03 P.M.  Derryl Howard's Google location data then placed him in the Peabody Housing Complex approximately 20 minutes later, from 3:19 P.M. until 3:22 P.M.

In order to establish Defendant and co-defendant Waiel Yaghnam's conspiracy to commit wire and mail fraud in support of Count III, the Government presented evidence of the submission of five different life insurance policy applications insuring the life of Andre Montgomery on which Defendant was the 100 percent beneficiary.  The Government also submitted Defendant's own text messages with Yaghnam, Exhibit 2O, in which the Defendant and Yaghnam describe not discussing the policies in front of Montgomery, hiding the policies from Montgomery's mother, and in which Yaghnam instructs Defendant to impersonate Montgomery on the phone with at least one of the life insurance companies, to which Defendant agrees.  The five policies all contain false

and inconsistent information with regard to Montgomery's health, income, employment status, and home address and were completed utilizing telephone calls, facsimiles, and electronic mail communications with the various companies.

To rebut the Government's evidence, Defendant testified that Yaghnam alone was responsible for the information contained in the policies and that there never existed a scheme to defraud any insurance company or to murder Montgomery.

"A jury's credibility determinations are virtually unreviewable on appeal." *United States v. Jefferson*, 652 F.3d 927, 930 (8th Cir. 2011). The jury clearly did not find Defendant's testimony to be truthful or compelling in the face of the overwhelmingly corroborated testimony of the Government's witnesses. Furthermore, on September 12, 2022, this Court made a finding pursuant to *United States v. Bell* that "(1) a conspiracy existed; (2) that Defendant …[was a] member[s] of the conspiracy…" (Doc. #370, pg. 3). The Court further ruled that "[t]he preponderance of the evidence has shown that Defendant, James Timothy Defendant, Waiel Rebhi Yaghnam, Terica Taneisha Ellis, Travell Anthony Hill, Ed Chandler, and Chris Carroll were engaged in the conspiracies charged in Counts I and III of the Superseding Indictment." *Id.* There was more than sufficient evidence to support each count of conviction. As such, defendant's Renewed Rule 29 Motion (Doc. #468) should be denied.

**B. Defendant's Motion for New Trial (Doc. #469)**

Defendant raises several claims for which he believes he is entitled to a new trial pursuant to Fed.R.Crim.P. 33. The majority of these issues were briefed prior to or during trial, in which case the Government has referred to its previous briefing herein. Below, the Government addresses Defendant's arguments in the following order: (a) the Magistrate Court's denial of Defendant's Motion to Suppress, and this Court's subsequent adoption of those findings; (b) the

admission at trial of text messages between Robbie and Andre Montgomery; (c) the admission of the testimony of co-defendant Travell Hill; (d) the admission of text messages between Defendant and his civil attorney regarding the collection of life insurance proceeds; (e) the admission of the testimony of Government expert Bastian Freund; (f) the denial of various motions to continue based on alleged *Brady*, *Giglio*, and *Jencks* violations; (g) the denial of Defendant's Motion to Dismiss based on co-defendant Travell Hill's drug use; (h) the denial of Defendant's Motion to Compel the production of early *Jencks* material; (i) the denial of Defendant's Motions to Compel testimony of Waiel Yaghnam and Christopher Carroll; (j) alleged objections to the proffered jury instructions; (k) Defendant's objection to this Court's responses to jury notes; (l) Defendant's various Motions for Mistrial during trial; (m) this Court's granting of Government's Motion to Exclude the testimony of Defendant's proposed expert, Russell Luce; (n) this Court's rulings on "all evidentiary objections"; and (o) Defendant's untimely objection to alleged statements made during Government's closing argument.

### 1. Legal Standard

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon Defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires…" However, district courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id*. The remedy "is reserved for exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015), *United States v. Stacks*, 821 F.3d 1038, 1044–45 (8th Cir. 2016).

### a. The Trial Court Properly Adopted the Report and Recommendation of the Magistrate Court Regarding Defendant's Seized Cellular Telephone

On December 23, 2021, prior counsel for defendant, Joseph Hogan, filed a Motion to Suppress evidence extracted from a cellular device found in Defendant's pocket at the time of his arrest on the instant charges.  (Doc. #183).  The Government responded and on March 25, 2022, United States Magistrate Judge Nannette Baker held an evidentiary hearing during which the Government called FBI Special Agent Christopher Faber.  SA Faber testified that when Defendant was searched pursuant to his arrest, a cellular telephone, later admitted both at the hearing and at trial as Exhibit 1, was located in the pocket of Defendant's shorts.  SA Faber also testified as to two recorded jail calls, admitted during the hearing, that Defendant made on August 24, 2020, following his arrest, during which Defendant stated the following:

> "…they bang on the door, I open it, there's seven motherfuckers with machine guns pointed in my face.  They take me in man.  I ain't got nothing but my gym shorts, my fucking phone, and a tank top on…"

In another recorded call on August 24, 2020 to an unidentified female, Defendant stated the following beginning at the 2:30 timestamp:

> "I ain't even had enough time to fucking turn my phone on live or record, none of that shit.  Just hands up.  So they just took me.  I had on my gym shorts, my fucking tank top, and my phone, and my flip-flops.  They fucking just took me."

Despite these statements, Defendant testified at the Evidentiary Hearing that Exhibit 1 belonged to him, but that FBI agents had retrieved the cellular telephone from inside his home, and not from his person.  SA Faber subsequently secured a federal search warrant for the device, the contents of which were largely included during the Government case-in-chief.

On April 15, 2022, Magistrate Judge Baker entered her Report and Recommendation that defendant's Motion to Suppress be denied, stating that she found "Agent Faber's testimony to be credible."  (Doc. #202, pg. 6).  Without objection from defendant, on May 24, 2022, this Court

entered an order adopting the Report and Recommendations of the Magistrate Court  (Doc. #213) and denying defendant's Motion to Suppress (Doc. #183).

Ordinarily, when reviewing a district court's denial of a suppression motion, the Court of Appeals reviews the court's factual findings for clear error and whether the Fourth Amendment was violated *de novo*.  *United States v. Rodriguez*, 484, F.3d 1006, 1010 (8th Cir. 2007) *citing United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007).  However, in Defendant's case, much like *Rodriguez*, Defendant failed to file objections to the Report and Recommendations, thus waiving his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained there."  *Id.* at 1011; *United States v. Newton*, 259, F.3d 964, 966 (8th Cir. 2001)(quoting *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994)).

As Defendant has waived his right to contest the findings of the Magistrate Judge's Report and Recommendation, and this Court's subsequent adoption of it, Defendant's Motion should be denied on this point.  However, even if this Court were to address the merits of his belated challenge to the Magistrate Court's findings, his claim still fails.  Defendant's argument rests solely on the credibility of Defendant's testimony at the suppression hearing, which conflicted directly with the statements he made in recorded jail conversations, which the Government introduced as evidence, to multiple people in the days after his arrest about where his cellular telephone was located at the time of his arrest.  "A credibility finding made by a magistrate judge 'after a hearing on the merits of a motion to suppress is virtually unassailable on appeal.'"  *United States v. Shafer*, 608 F.3d 1056, 1065 (8th Cir. 2010)(quoting *United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008)).  "The 'decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the

story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.'" *United States v. Harper*, 787 F.3d 910, 914 (8th Cir. 2015) (quoting *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995).

The testimony of SA Christopher Faber was not refuted by any extrinsic evidence.  To the contrary, Defendant's own recorded statements undermined the credibility of his testimony at the suppression hearing.  As such, Defendant's Motion should be denied as to this point.

**b.  The Trial Court Properly Admitted Text Messages from Andre Montgomery to Robbie Montgomery Regarding his Plan to Stay Away from St. Louis (Exhibit 4G) (Doc. #287)**

As set forth in the Government's Pretrial Brief (Doc. #301, pgs. 20-26), the Government admitted Exhibit 4G at trial, which consisted of several communications between victim Andre Montgomery and his grandmother (defendant's mother) Robbie Montgomery.  Prior to admission, the Court limited one of the Government's proposed portions of Exhibit 4G so that it would not reference "what Tim [Defendant] was capable of," as it implied past bad acts on behalf of Defendant.  This Court properly considered the totality of this exhibit and the Government's arguments that it was seeking admission of 4G not for the truth of the matter asserted, but to establish victim Montgomery's state of mind, plan, intend, and motive pursuant to Fed.R.Evid. 803(3).  The Government reasserts all arguments set forth in its Pretrial Brief by reference and asserts that defendant's Motion should be denied on this point.

**c.  The Trial Court Properly Permitted Testimony from Travell Hill About his Conversation with Defendant on March 14, 2016 (Doc. #288)**

This Court properly admitted the testimony of Travell Hill, pursuant to Eighth Circuit precedent as set forth in Government's Motion Response (Doc. #299).  The Government hereby incorporates that response by reference and Defendant's Motion should be denied as to this point.

**d.  The Trial Court Properly Admitted Communications Between Defendant and his Texas-Based Civil Counsel Regarding Attempts to Collect on a Life Insurance Policy (Exhibit 2Q) (Doc. #291)**

This Court properly admitted Exhibit 2Q and incorporates by reference all arguments set forth in its Motion in Limine Response in Doc. #295.  Defendant's Motion should be denied as to this point.

**e.  The Trial Court Properly Permitted the Expert Testimony of FBI Special Agent Bastian Freund Regarding Cellular Location Information (Doc. #294)**

This Court properly admitted the expert testimony of FBI Special Agent Bastian Freund and incorporates by reference all of its previous arguments set forth in Doc. #300.  Defendant's Motion should be denied as to this point.

**f.  The Trial Court Properly Denied Defendant's Various Motions to Continue Based on *Brady*, *Giglio*, and *Jencks Act* (Doc. #338)**

This Court properly considered at least two separate motions by Defendant to continue the trial date (Doc. #271, #302) and relies upon arguments made before this Court and set forth in its respective Responses (Docs. #274, #275, #303), incorporated herein by reference.  Defendant's Motion should be denied as to this point.

**g.  The Trial Court Properly Denied Defendant's Motion to Dismiss Indictment and Motion to Bar Travell Hill's Testimony Based on Extensive Drug Use (Doc. #305)**

This Court properly denied Defendant's Motion to Dismiss the Indictment or, in the alternative, to bar the testimony of Travell Hill based on his extensive drug use.  The Government reincorporates all arguments set forth in its Response, Doc. #309, and asserts Defendant's Motion should be denied on this point.

**h.  The Trial Court Properly Denied Defendant's Premature Motions to Compel *Jencks Act* Materials (Docs. #231, #232)**

This Court properly denied Defendant's Motion to Compel the production of early *Jencks* material.  The Government reincorporates all arguments set forth in its Response, Doc. #247, and asserts that Defendant's Motion should be denied as to this point.

   i.  **The Trial Court Properly Denied Defendant's Motion to Compel Co-Defendant Waiel Yaghnam to Testify at Trial (Docs. #354 and #363) and also Properly Denied Defendant's Motion to Compel Testimony of Christopher Carroll (Doc. #364)**

On August 20, 2020, co-defendant Waiel Yaghnam was charged with one count of conspiracy to commit mail and wire fraud, and five separate counts of aggravated identity theft. On July 22, 2022, Yaghnam plead guilty to the sole count of conspiracy to commit mail and wire fraud.  The plea agreement Yaghnam entered into stated that he and Defendant conspired to submit and collect upon fraudulent life insurance polices.  Yaghnam's sentencing was then scheduled for October 26, 2022, approximately one-and-a-half months after the completion of the trial in this matter.  During the course of trial, counsel for Defendant indicated they were attempting to serve Yaghnam with a subpoena to testify on Defendant's behalf.  After two unsuccessful attempts, the Government contacted Yaghnam's attorney, Neil Bruntrager, who indicated to this Court that if called to testify at trial, Yaghnam would assert his Fifth Amendment rights and refuse to answer any questions.

Christopher Carroll was never charged in the murder-for-hire conspiracy for which Defendant was tried.  However, this Court did make a finding pursuant to *United States v. Bell* that said conspiracy did exist and that, for purposes of the admission of Christopher Carroll's text messages, Mr. Carroll was a member of the conspiracy and his statements were in furtherance thereof.  Christopher Carroll is currently, and was at the time of trial, charged in a separate conspiracy to commit bank fraud and money laundering under cause number 4:21-CR-00532-SEP. Carroll was represented by attorney James Martin.  During the course of Defendant's trial, counsel

for the defense successfully served Carroll with a subpoena to testify.  Carroll was brought before this Court with his attorney in order for defense counsel to conduct an offer of proof, during which time Carroll, upon the advice of his counsel, repeatedly invoked his Fifth Amendment rights against self-incrimination.

The appellate court reviews for abuse of discretion the decision not to compel testimony after a witness invokes his Fifth Amendment right against self-incrimination. *United States v. Blaylock,* 421 F.3d 758, 770 (8th Cir.2005) *citing United States v. Washington,* 318 F.3d 845, 856 (8th Cir.2003). "The district court is to review the potential testimony outside the hearing of the jury and order the witness to answer only if it is 'perfectly clear' that the answer 'cannot possibly' tend to incriminate the witness." *United States v. Campbell,* 410 F.3d 456, 463 (8th Cir.2005), *citing Washington,* 318 F.3d at 856. Representation by the witness's counsel that the witness will invoke his Fifth Amendment rights "is sufficient for the district court to refuse to compel that witness to appear." *United States v. Warfield,* 97 F.3d 1014, 1019–20 (8th Cir.1996).

Defendant cites no law or authority under which this Court could have compelled the potentially-incriminating testimony of either Waiel Yaghnam or Christopher Carroll.  As such, Defendant's Motion should be denied as to these points.

**j.  As the Jury Instructions in this Matter were Agreed Upon, the Trial Court Properly Instructed the Jury**

Fed.R.Crim.P. 30(d) sets forth that "[f]ailure to object in accordance with this rule [to the giving of jury instructions] precludes appellate review, except as permitted under Rule 52(b)."  A party generally may not assign error to a jury instruction if he fails to object before the jury retires or to 'stat[e] distinctly the matter to which that party objects and the grounds of the objection.'" Fed.R.Crim.P. 30; *Jones v. United States*, 527 U.S. 373, 387 (1999). Following an informal instruction conference, the parties were able to agree on all instructions submitted to the jury.  No

objections were lodged during the formal instruction conference or prior to the jury retiring to commence their deliberations. As Defendant waived any objections to the tendered jury instructions, Defendant's Motion should be denied on this point.

**k.  The Trial Court Properly Instructed the Jury with Respect to All Jury Notes**

This Court properly considered and responded to all jury notes submitted during the course of their deliberations in this case.  The Government relies upon the record made at the time these notes were submitted and the respective responses given by this Court.  Defendant's Motion should be denied as to this point.

**l.   The Trial Court Properly Denied All Motions for Mistrial**

This Court properly considered and denied all of defendant's Motions for Mistrial during the course of the trial on this matter.  The Government relies upon the record made at the time these motions were made and asserts defendant's motion should be denied on this point.

**m.  The Trial Court Properly Excluded Proposed Defense Expert Russel Luce**

The Government reincorporates by reference all arguments set forth in its Motion to Exclude, Doc. #327, and asserts that, having properly considered and excluded the testimony of proposed "expert" Russell Luce, Defendant's Motion should be denied on this point.

**n.  The Trial Court Properly Considered and Ruled on All Evidentiary Objections**

Assuming a timely objection, an appellate court will reverse evidentiary rulings only if the district court abused its discretion in admitting the evidence or testimony.  *United States v. Shedlock*, 62 F.3d 214, 216 (8th Cir. 1995); *United States v. LeAmous*, 754 F.2d 795, 797 (8th Cir. 1985).  If the admission of a contested piece of evidence was not timely objected to at trial, an appellate court will review for plain error.  *United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011).

This Court properly considered and ruled upon all evidentiary objections prior to and during the court of the trial on this matter.  To the extent a timely objection was made, the Government relies upon the record developed during the course of trial.  Defendant's Motion should be denied on this point.

### o.  The Government Made No Improper Argument During Closing, Nor Was Any Argument Objected to During Trial

Counsel for Defendant misstates the content of the Government's closing argument.  The Government argued during closing that, as to Count III, the issue was *not* whether Andre had actually signed the insurance applications, but rather whether Defendant conspired with co-defendant Waiel Yaghnam to knowingly deceive the insurance companies to obtain and collect on a life insurance policy.  The Government then proceeded to point out, among other items, the text messages between Defendant and his co-conspirator, and corresponding insurance records, which established Defendant's guilt.  No part of its argument was improper or inconsistent with evidence that had been admitted during the course of the trial.

In the absence of a timely objection, it is appropriate to review for plain error whether a prosecutor's improper statements during closing argument warrant a new trial.  *United States v. Young,* 470 U.S. 1, 6 (1985); *United States v. Davis,* 534 F.3d 903, 914 (8th Cir. 2008).  This legal principle presumes that any improper statement or argument was made at all.  Given that no improper arguments were posed, and no objection was made, defendant's Motion should be denied on this point.

WHEREFORE, the Government requests this Honorable Court enter an order denying Defendant's Renewed Motion for Judgment of Acquittal (Doc. #468) and Motion for New Trial (Doc. #469).

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

/s/  *Angie E. Danis*
ANGIE E. DANIS, #64805MO
GWENDOLYN E. CARROLL, #4657003NY
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
(314) 539-2200
Angie.Danis@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, the undersigned filed the foregoing electronically with the Clerk of the Court to be served by way of the Court's electronic filing system upon all counsel of record.

*/s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney

16