UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20CR418 JAR |
| | ) | |
| JAMES TIMOTHY NORMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant James Timothy Norman's ("Norman")
Renewed Rule 29 Motion (ECF No. 468) and Defendant Norman's Motion/Memorandum in
Support of His Rule 33 Motion for a New Trial (ECF No. 469). The Government filed an Omnibus
Response to Defendant's Renewed Motion for Judgment of Acquittal (Doc. #468) and Motion for
New Trial (Doc. # 469) on December 30, 2022. (ECF No. 474). The time for filing a reply has
passed so this matter is fully briefed and ready for disposition.  For the reasons stated herein, the
Court denies both motions.

## STANDARD OF REVIEW

Rule 29 states, "the court on the defendant's motion must enter a judgment of acquittal of
any offense for which the evidence is insufficient to sustain a conviction."   Fed. R. Crim. P. 29(a).
Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and
grant a new trial if the interest of justice so requires."   Fed. R. Crim. P. 33.

## DISCUSSION

### I.     Rule 29

Norman renewed his oral and written Rule 29 Motion for acquittal, which was made at the
close of the evidence. (ECF No. 468). After a nine day jury trial, Norman was convicted of Murder

for Hire Conspiracy: 18 U.S.C. § 1958 (Count I), Murder for Hire: 18 U.S.C. § 1958 (Count Two), and Wire and Mail Fraud Conspiracy: 18 U.S.C. § 1349 (Count Three) on September 16, 2022.

As it found previously during and at the end of the trial, the Court finds that the evidence was more than sufficient for a finding that Norman was culpable of participating in a plot to murder of his nephew, Andre Montgomery, on March 14, 2016.

The Government presented Norman's text messages with co-defendants Waiel Yaghnam, Travell Hill, Terica Ellis, Christopher Carroll, and Ed Chandler.   The Government introduced certified cellular telephone records of these users to establish their subscriber identities and to provide location information for March 13, 14, and 15, 2016.  The location information was further verified by Government witnesses Terica Ellis, Travell Hill, and Derryl Howard, as well as FBI Special Agent Bastian Freund.   The Government provided text messages between Montgomery and Terica Ellis in the days prior to and on the day of the murder.

The Government demonstrated that Ellis and Norman used "burner" cellular telephones throughout the day of Montgomery's murder. FBI Special Agent Freund testified that Norman's "burner" phones shadowed the location of his regular cellular telephones on March 14, 2016. Ellis testified that Norman had her find and relay back Montgomery's location throughout the day. Ellis was at the scene of the murder and notified Travell Hill that Montgomery was present.   Hill told Ellis to move and Ellis heard gunshots as she drove away.   Hill testified that he shot Montgomery multiple times outside 3964 Natural Bridge.   At 8:02 p.m., 911 was called.   Ellis testified that she called Norman at 8:30 p.m., and he told her to leave the area and dispose of her cellular phone.

Travell Hill testified that he met with Norman prior to the shooting and understood that Norman would pay Hill to murder Montgomery.  Hill further stated that, on March 16, 2016, Norman told him to meet "DJ," or Derryl Howard, to accept $5,000, as payment for Montgomery's

murder.  The Government introduced a photograph that Howard took of the money, near the Peabody Housing Complex.

In support of Count III for conspiracy to commit wire and mail fraud, the Government presented evidence of the submission of five different life insurance policy applications to insure the life of Andre Montgomery for which Norman was the beneficiary. Likewise, Norman and Waiel Yaghnam exchanged text messages regarding hiding life insurance policies from Montgomery and his mother and for Yaghnam to impersonate Montgomery on the telephone with insurance companies.  The Government provided evidence that false information regarding Montgomery's health, income, employment status, and home address were provided to insurance companies in various telephone calls, facsimiles, and electronic mail communications. On each application, Norman was the intended sole beneficiary.  Although Norman testified that Yaghnam acted alone in providing the fraudulent information to the insurance companies, the Court declines to disturb the jury's reasonable credibility determination, particularly given the overwhelming evidence in support of their findings. *See United States v. Trotter*, 837 F.3d 864, 868 (8th Cir. 2016) (quoting *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010) ("'A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony.'").

In sum, as previously set forth on the record, the Court finds that sufficient evidence supports each count of Norman's conviction.   The Court denies his Renewed Rule 29 Motion.

II.   **Rule 33**

Norman argues the Court should grant his Rule 33 motion for a new trial on the following bases: (a) the Magistrate Court's denial of Norman's Motion to Suppress, and this Court's subsequent adoption of those findings; (b) the admission at trial of text messages between Robbie and Andre Montgomery; (c) the admission of the testimony of co-defendant Travell Hill; (d) the

admission of text messages between Norman and his civil attorney regarding the collection of life insurance proceeds; (e) the admission of the testimony of Government expert Bastian Freund; (f) the denial of various motions to continue based on alleged *Brady, Giglio,* and *Jencks* violations; (g) the denial of Norman's Motion to Dismiss based on co-defendant Travell Hill's drug use; (h) the denial of Norman's Motion to Compel the production of early *Jencks* material; (i) the denial of Norman's Motions to Compel testimony of Waiel Yaghnam and Christopher Carroll; (j) alleged objections to the proffered jury instructions; (k) Norman's objection to this Court's responses to jury notes; (l) Norman's various Motions for Mistrial during trial; (m) this Court's granting of Government's Motion to Exclude the testimony of Norman's proposed expert, Russell Luce; (n) this Court's rulings on "all evidentiary objections"; and (o) Norman's untimely objection to alleged statements made during Government's closing argument.

1. **Magistrate Court's denial of Defendant's Motion to Suppress, and this Court's subsequent adoption of those findings as to Norman's Seized Cellular Telephone**

In his Rule 33 motion, Norman argues that the trial court erred in denying his motion to suppress the evidence seized in connection with the execution of his arrest warrant on August 18, 2020, particularly the seizure of Norman's cellphone.   (ECF No. 469 at 1-2).

First, the Court notes that Norman failed to file an opposition to Magistrate Judge Baker's Report and Recommendation.   Norman, therefore, "waived his right to *de novo* review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained therein." *United States v. Rodriguez*, 484 F.3d 1006, 1010–11 (8th Cir. 2007) (citing *United States v. Newton,* 259 F.3d 964, 966 (8th Cir.2001) (quoting *Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir. 1994)). However, even if this Court were to conduct a *de novo* review of the findings of fact in the Report and Recommendation, the Court finds that Norman's arguments still fail.

– 4 –

Next, in response to Norman's Motion to Suppress, the Government argued that there was no search of Norman's residence and the cellular phone was seized during a search incident to his arrest. Agent Faber testified that he seized the cellular phone as part of his pat down search of Norman, incident to his arrest. Likewise, Norman twice mentioned having his telephone in his recorded phone calls from the Madison County Jail.  Based upon her observations of the witnesses and after listening to Norman's telephone calls, Magistrate Judge Baker made a credibility determination, finding that Agent Faber was credible and Norman was not. (ECF No. 202 at 6).   Therefore, Magistrate Judge Baker recommended that this Court deny the Motion to Suppress because law enforcement seized Norman's phone as part of a search incident to arrest and there was no Fourth Amendment violation.  (*Id*.)   As repeatedly held in this Circuit "[a] credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (quoting *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007)); *United States v. Stewart*, 32 F.4th 691, 694 (8th Cir. 2022).   Other than his own testimony, Norman offers no basis for this Court to discredit the testimony of Special Agent Farber.   Further, given his own contradictory statements from his recorded jail telephone calls, the Court finds Norman's testimony to be uncredible, just as the Magistrate Judge found.   Thus, the Court denies Norman's Motion for a New Trial on this point.

## 2.  Text Messages from Andre Montgomery to Robbie Montgomery

Norman also claims the trial court erred in denying his Motions in Limine to bar "Andre Montgomery's foundationless, wholly irrelevant, non-probative, and highly prejudicial statements regarding Mr. Norman."  (ECF No. 469 at 2 (citing ECF No. 287)).   Norman sought to bar the Government's introduction of Mr. Montgomery's statements suggesting that Norman was out to get him or kill him. (ECF No. 469 at 3).   Norman claims that admitting these statements violated

Fed. R. Evid. 401, 402, and 403, as well as his Sixth Amendment right to confront and cross-examine witnesses.

At trial, the Government admitted Exhibit 4G, which included communications between Andre Montgomery and his grandmother Robbie Montgomery. Prior to admission, the Court limited one of the Government's proposed portions of Exhibit 4G and excluded a reference to "what Tim [Norman] was capable of" in an effort to avoid a negative inference regarding Norman's past bad acts. After that redaction, the Court allowed the admission of these communications, not for the truth of the matter asserted, but to establish Andre Montgomery's state of mind, plan, and intent. *See* Fed. R. Evid. 803(3). The Court finds no basis for disturbing its ruling and denies Norman's Motion on this point.

### 3.  Travell Hill's Testimony about his March 14, 2016 Conversation with Norman

Norman argues that the Court should have granted his Motion in Limine to bar co-Defendant Travell Hill's testimony regarding Norman's "alleged intentions with respect to Andre Montgomery."  (ECF No. 469 at 3-4 (citing ECF. No. 288)). Norman argues that this Court improperly allowed Hill to testify at trial regarding his understanding that Norman wanted Hill to murder Andre Montgomery in violation of Fed. R. Civ. P. 401, 402, and 402.  (ECF No. 469 at 4-5). Norman claims that this ruling violated Fed. R. Evid. 401, 402, 403, and Hill "was the only witness who was able to provide trial testimony that may have even suggested that Mr. Norman had any improper motive towards" Montgomery.  (ECF No. 469 at 4).  Norman claims he was substantially prejudiced by this error, and he should be granted a new trial.  (ECF No. 469 at 5).

The Court holds that it properly admitted the testimony of Travell Hill about his March 14, 2016 conversation with Norman.  The Court correctly allowed the Government to present Hill's testimony as to his understanding of his conversation with Norman. See *United States v. Fenner*, 600 F.3d 1014, 1023 (8th Cir. 2010) (Informants could explain slang terms and their understanding

of those terms because they "had participated in the conversations and their explanations at trial were based on their perceptions"); *United States v. Scott,* 243 F.3d 1103, 1107 (8th Cir.2001) (stating that, in a case where the jury heard audio tapes of intercepted calls, "[a] district court does not abuse its discretion in admitting testimony by a [co-conspirator] witness with firsthand knowledge as to his understanding of words used by the defendant or other conspirators.").   The Court finds no reason for a new trial as to Hill's clarifying testimony.

### 4.  Communications Between Norman and his Texas-Based Civil Counsel Regarding Attempts to Collect on a Life Insurance Policy

Norman argues that the Court improperly allowed the Government to introduce written communications, including text messages and emails, between Norman and his then-civil litigation counsel regarding a potential declaratory judgment action for insurance policy proceeds. (ECF No. 469 at 4).   Norman claims that these were protected attorney-client communications, not in furtherance of a crime or fraud.   (ECF No. 469 at 5).   Norman contends that the jury relied upon these communications when it reached its verdict, as evidenced by the jury's deliberation questions.   (*Id*.)

The Court holds that it properly admitted Norman's communications with his Texas-based civil counsel under the crime-fraud exception to the attorney-client privilege.   *See In re Green Grand Jury Proc.*, 492 F.3d 976, 979 (8th Cir. 2007) (quoting *United States v. Zolin,* 491 U.S. 554, 563 (1989) ("Under the crime-fraud exception, attorney-client privilege 'does not extend to communications made for the purpose of getting advice for the commission of a fraud or a crime.'"). Here, the facts demonstrate that Norman sought legal advice in furtherance of fraudulent or illegal activity.   The Court views Norman's communications with his Texas-based civil counsel as part of his efforts to collect on the life insurance policy on Andre Montgomery and in

furtherance of his overall criminal fraud or scheme. Therefore, the Court denies Norman's Motion for a New Trial on this point.

**5. Expert Testimony of FBI Special Agent Bastian Freund Regarding Cellular Location Information**

Norman claims that the Court improperly allowed FBI Special Agent Bastian Freund to testify as an expert witness at trial.  (ECF No. 469 at 5).  Norman claims that the Government's disclosures as to Freund were untimely and insufficient under Fed. R. Crim. P. 16 and Fed. R. Evid. 702. (*Id.*)  Norman further argues that the Court's decisions prevented him from obtaining a rebuttal expert, thus denying him of his Sixth Amendment right to meaningfully cross-examine Freund.  (ECF No. 469 at 5-6).  Norman claims this was clear error and resulted in substantial prejudice to him because the jury relied upon Freund's "extensive cell phone tower testimony" as the basis for its verdict. (ECF No. 469 at 6).

The Court holds that it properly admitted the testimony of FBI Special Agent Freund.   The Government complied with its disclosure obligations by providing an expert report 54 days before trial, including Freund's curriculum vitae.   Freund's report provided his opinions and methodology used to obtain his specific findings and conclusions concerning the location of the phones during the relevant time periods.   The Court reiterates that Freund's qualifications and report were adequate and that Norman was provided this information with sufficient time before trial.   The Court denies Norman's Motion for a New Trial.

**6. Motions to Continue based on *Brady*, *Giglio*, and *Jencks* Act**

Norman claims that this Court "forced Mr. Norman and his counsel to proceed to trial, even though the Government produced, on the very eve of trial and for the first time, essentially all of the witness statements (more than 50) and witness files (42 or more) – which it intentionally and tactically sat on for months and years."  (ECF No. 469 at 6).   Norman claims that the

Government's failure to timely provide this evidence violated his Due Process and Sixth Amendment rights, as well as his rights under *Brady*, *Giglio*, and the *Jencks* Act. (*Id.*)

The Court again finds no *Brady*, *Giglio*, or *Jencks* Act violations, let alone any such errors that would mandate a new trial. Norman did not identify any disclosed materials that were exculpatory or otherwise qualified as *Brady* materials. Norman has not identified any *Giglio v. United States*, 405 U.S. 150 (1972) information that was not timely provided and the evidence indicates that Norman was afforded timely information regarding convictions of potential trial witnesses.  *See, e.g.*, ECF No. 309 at 1-2 (noting the Government provided information regarding Travell Hill's drug convictions five weeks prior to trial). The Government satisfied its discovery obligations by disclosing both *Jencks* Act material and trial exhibits 10 days in advance of trial. Moreover, the Eighth Circuit has affirmed the denial of a continuance in cases where the defendant was afforded even less time between disclosure of materials and trial.  *See, e.g., United States v. Chahia*, 544 F.3d 890, 896 (8th Cir. 2008) ("The United States provided the first set of discovery documents 13 days before trial. Chahia has not shown which of those documents, if any, were subject to pretrial disclosure or relevant to his defense. Further, Chahia has not explained how the 'late' disclosure hampered his defense."). In sum, the Court finds that Norman had all the disclosures in a timely manner to enable him to prepare for trial and there is no basis for a new trial.

### 7.  Travell Hill's Drug Use

Prior to trial, Norman moved to dismiss the Indictment, to bar the Government from calling Travell Hill as a witness at trial, or for a continuance of the trial to allow Norman to locate an expert regarding Hill's drug use on the date of Montgomery's murder and the surrounding time frame.  (ECF No. 469 at 7).  In addition, Norman claims that the Government did not timely disclose the consideration offered to Hill for his cooperation in this case.   (ECF No. 469 at 7-8).

– 9 –

On August 2, 2022, five weeks prior to the scheduled trial date, the Government disclosed the criminal convictions of potential trial witnesses, including Travell Hill's three separate convictions for possession of a controlled substance.  (ECF No. 309 at 1-2).  On August 26, 2022, the Government made *Jencks* disclosures, including statements by Travell Hill acknowledging that he was a drug user and had used drugs at the time of Andre Montgomery's homicide.  (ECF No. 309 at 2).  The Court holds that the Government's disclosures were made sufficiently in advance of trial to enable Norman to use the information at trial and denies his Motion for a New Trial as to this point.

### 8.  Motion to Compel *Jencks* Act Materials

Norman claims that the Court improperly denied his Motion to Compel the Government to produce *Jencks* Act materials in a timely manner to allow him to prepare for trial.   (ECF No. 469 at 8). Instead, the Government produced Jencks Act materials only "within two weeks or so of trial," which resulted in substantial prejudice to Norman and his counsel.  Norman claims his counsel could not adequately prepare due to the late production and he was denied his Sixth Amendment rights.

Here, the Government produced its *Jencks* Act materials more than 10 days prior to trial, well in advance of the statutorily mandated time requirements.  *See* ECF No. 247; 18 U.S.C. § 3500.  Norman has not specifically identified how he was prejudiced by any allegedly late disclosure or what his counsel would have done differently.   Therefore, the Court denies Norman's Motion for a New Trial on this basis.

### 9.  Motion to Compel Co-Defendant Waiel Yaghnam and Christopher Carroll

Norman asserts the trial court erred in denying his motions to compel Waiel Yaghnam and Christopher Carroll to appear at trial. Norman argues that Yaghnam and Carroll should not have

been allowed to invoke their Fifth Amendment rights.   Norman claims that Yaghnam and Carroll waived their Fifth Amendment rights based upon the audio and/or video statements provided to the Government.

The defense never served Yaghnam with a subpoena.   In any event, Yaghnam's counsel indicated to the Court that his client would assert his Fifth Amendment right not to provide incriminating testimony if he were brought before the Court.   Defense counsel subpoenaed Carroll to testify and provide an offer of proof.   Carroll appeared and, upon the advice of counsel, invoked his Fifth Amendment right not to testify.   The Court finds that "representation to the district court by a witness's counsel that the witness would exercise his Fifth Amendment rights if called to testify is sufficient for the district court to refuse to compel that witness to appear." *United States v. Warfield*, 97 F.3d 1014, 1019–20 (8th Cir. 1996) (citing *United States v. Swanson*, 9 F.3d 1354, 1359 (8th Cir.1993)).   Finding no error, the Court denies a new trial.

### 10. Jury Instructions

Norman argues that the trial court erred in refusing to give his proposed jury instructions instead of the instructions actually tendered.   Norman offers no new or additional argument besides what was previously in the record.   (ECF No. 469 at 10-11).

Norman's counsel waived any objections to the tendered jury instructions.   Therefore, the Court finds no basis for a new trial as to the agreed-upon jury instructions.   *See* Fed. R. Crim. P. 30(d) ("Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."); *Jones v. United States*, 527 U.S. 373, 387 (1999) (quoting Fed. R. Crim. P. 30) ("A party generally may not assign error to a jury instruction if he fails to object before the jury retires or to 'stat[e] distinctly the matter to which that party objects and the grounds of the objection.'").

**11. Jury Notes**

Norman claims that this Court erred in its response to the jury's questions.   Norman provides no new or additional argument than what was previously in the record.   The Government relies upon the record made at trial.

Having been presented with no new legal arguments or evidence, the Court refers to its prior determination and decision and denies the Motion for a New Trial.

**12. Motions for Mistrial**

Norman claims that the Court repeatedly erred by denying him the right to present a defense, barring Norman from introducing information regarding: the relationship between Andre Montgomery and Norman, why Andre Montgomery left St. Louis for several months, why Andre Montgomery was removed from his residence, Norman's financial circumstances, and the insurance application meeting involving Yaghnam, Andre Montgomery, and Norman.   Further, Norman claims the Court erred in allowing evidence regarding American Express bills owed by Norman.   (ECF No. 469 at 12).   In response, the Government relies upon the record made at the time Norman made his Motion for a Mistrial.

Having been presented with no new legal arguments or evidence, the Court refers to its prior determination and decision and denies the Motion for a New Trial.

**13. Proposed Defense Expert Russell Luce**

Norman claims that the trial court erred by not allowing the testimony of his proposed expert Russell Luce.   Luce would have testified as to common insurance policy purchasing and insurance practices.   (ECF No. 469 at 12-13).   Norman claims that Luce's testimony would have rebutted the Government's argument that Norman's purchase or attempted purchase of insurance

policies on his nephew, Andre Montgomery, was unusual.   (ECF No. 469 at 13).   Norman claims that Luce's testimony would have controverted the Government's insurance company witnesses who were allowed to testify that Norman's applications were out of the ordinary and fraudulent. (*Id*.)

The Court excluded the testimony of Luce based upon defense counsel's late and inadequate disclosures.   Defense counsel provided no expert report, no fee schedule, no list of cases wherein Luce had testified, and no documentation relied upon by Luce in forming his opinion.   Because defense counsel did not provide a summary of Luce's proposed testimony and the bases for his opinions as required by Fed. R. Crim. P. 16, the Court correctly excluded him as a witness.   *See, e.g*., *United States v. Petrie*, 302 F.3d 1280, 1288 (11th Cir. 2002).   This point is denied.

## 14. Evidentiary Objections

Norman summarily asks the Court to revisit all of its evidentiary trial objections. (ECF No. 469 at 14).   The Government refers the Court to its prior arguments made when such evidence was presented at trial.

Having been presented with no new legal arguments or evidence, the Court refers to its prior determination and decision and denies the Motion for a New Trial.

## 15. Closing Argument

Norman contends that he should be granted a new trial because the Government stated, during closing arguments, that at the meeting between Andre Montgomery, Norman, and Yaghnam, documents were shoved in Andre Montgomery's face and he was forced to sign them. (ECF No. 469 at 15).

Norman's counsel did not object to the presentation of this evidence during closing arguments so the Court reviews any statements for plain error.   *See United States v. Darden*, 688 F.3d 382, 388 (8th Cir. 2012) (quoting *United States v. Davis,* 534 F.3d 903, 914 (8th Cir. 2008)) ("If the defendant has failed timely to object to improper statements, as in this case, 'we review only for plain error and reverse only under exceptional circumstances.'"). Under this standard of review, Norman must demonstrate "a reasonable probability that the outcome would have been different absent the alleged error." *Darden*, 688 F.3d 382, 388–89 (quoting *United States v. Herbst,* 668 F.3d 580, 587 (8th Cir. 2012)).

Initially, Norman misstates the Government's closing argument.   In the closing argument, the Government argued that Norman conspired with Yaghnam to knowingly deceive the insurance companies to obtain and collect on a life insurance company.   The Government identified text messages between Norman and Yaghnam and insurance records, providing evidence of the illegal conspiracy.   The Court finds that the Government's closing argument included information in evidence to support the verdict and Norman has not demonstrated that the outcome of his trial would have been different absent the Government's argument.   The Court holds no new trial is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Norman's Renewed Rule 29 Motion (ECF No. 268) and Defendant Norman's Motion/Memorandum in Support of His Rule 33 Motion for a New Trial (ECF No. 269) are **DENIED**.

Dated this 1st day of March, 2023.

_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

– 14 –